(19 Misc. Rep. 222.)

FORSTER v. CANTONI.

BOMEISLER v. FORSTER.

(Supreme Court, Special Term, New York County. January. 1897.)

CONTRACTS—PUBLIC POLICY—INDUCEMENT TO DIVORCE.

Public policy is violated by an agreement by a man to pay a woman a certain allowance yearly if she would get a divorce and marry him; and therefore such woman having obtained the divorce, and lived with him seven years without marriage, cannot recover for services as housekeeper during that time, or for loss of the benefits of her former marriage, on the termination by him of their relations.

Actions by Elsa Forster against Salvatore Cantoni, and by Louis E. Bomeisler, as executor of the will of Salvatore Cantoni, deceased, against Elsa Forster. Plaintiff in the first action moves that the action be revived and continued against Louis E. Bomeisler as executor, etc. Denied. Louis E. Bomeisler, as executor, etc., moves that proceedings in the first action be stayed until a decision by the court of appeals in the second action. Denied.

Samuel H. Randall, for Elsa Forster.

W. B. Hornblower, for Louis E. Bomeisler, executor.

RUSSELL, J. In the case first named, the plaintiff moves to continue the action, which is yet untried, against Bomeisler, the executor of the deceased defendant; and in the second action the executor moves for a stay of the trial of the first action, and also for a stay of the operation of judgment in the second action until the determination of the court of appeals, on an appeal taken from the judgment of the appellate division reversing the judgment obtained by Bomeisler, executor, and dismissing the complaint therein on the merits, the judgment reversed being for the plaintiff, enjoining the prosecution of the first action. The motion to continue the first action against the executor, on the question of power to continue it, depends upon the determination of the inquiry as to whether any cause of action survives. This inquiry is divided also into two questions, which must be affirmatively answered in favor of the plaintiff, Mrs. Forster, before the order to continue can be granted: First. Is any cause of action maintainable upon the scope of the complaint and the conceded facts? And, second, if such a cause of action was enforceable against the deceased in his lifetime, did it survive against his executor? For it would be futile to ask the court to proceed to a trial of the action brought by Mrs. Forster, as well as unnecessary to continue the litigation in the court of appeals in the action brought by Cantoni for an injunction, if death has erected an impassable barrier to further procedure to test the merits of Mrs. Forster's claim. That claim, briefly stated, is this: In July, 1884, Mrs. Forster, being then a married woman, and the mother of three daughters, became acquainted with Cantoni, he representing himself to be a very wealthy and unmarried man; and in April, 1885, she entered into an agreement with him whereby Cantoni promised her, if she would leave

her husband, obtain a divorce, and become the wife of Cantoni, he would provide for her support and her three daughters from the time she left her husband, would furnish her the money to get a divorce, and give her an allowance of $5,000 a year, besides a provision in case of death. Mrs. Forster, relying on that agreement, and believing his representation that he was an unmarried man, in the same month in which the agreement was made left her husband and his home, taking her daughters, and by the aid of defendant did obtain a divorce in April, 1887, and did refrain from getting any provision for alimony, and did live with the defendant as his wife until 1892, no ceremonial of marriage being alleged, at which time their relations ceased, and the payments of her $5,000 a year stopped, and she has lost the home, support, and maintenance provided by her former husband and the alimony coming from the decree of divorce, to her damage in the sum of $100,000.

The second cause of action in her complaint is for services rendered the defendant at his request, as his housekeeper, to the value of $70,000, for the seven years from April, 1885, to June, 1892, thus fixing the period of her living with him under the contract relation set forth in the first count as beginning in April, 1885, at the time of the agreement, two years before she procured a divorce from her husband. This second count is inserted to procure a judgment for the value of the services of Mrs. Forster in the relation she occupied, assuming that the presumably oral agreement for her provision is not enforceable. The services as housekeeper were incidental, and rest upon the agreement made, which is so fully set forth in the preliminary part of the complaint. This view is made clear by the proceedings upon the trial of the action brought by Cantoni to restrain the prosecution of her action, Cantoni's claim in that action being that he had settled and paid her in full and obtained a release and a covenant not to further prosecute any claim against him, which agreement he sought to have specifically enforced in the action he brought against her. On that trial (page 85, appeal book, which is used on these motions as a part of the papers and proceedings for the determination of this motion) Mrs. Forster's counsel produced his client as a witness, and asked her this question: "Q. You were at that time the wife of Dr. Brennan? A. Yes, sir. Q. Did you have any conversation with the plaintiff in 1885? A. Yes, sir. Q. With reference to your leaving your husband, and did you at that time make any agreement with Mr. Cantoni?" Mrs. Forster's counsel then stated: "I desire to prove that at that time she entered into the contract stated in her complaint in the action of Forster against Cantoni now pending in this court. Q. Did you enter into any agreement with Mr. Cantoni with reference to your becoming his wife, in 1885, and did you procure a divorce from your husband, Dr. Brennan, so as to become the wife of Mr. Cantoni, and at that time did he enter into an agreement with you that if you would do so he would give you the sum of $5,000 per annum as long as you should live?" At page 83, folio 346, her counsel further asked Mrs. Forster: "Q. Did you continue to live with Mr. Cantoni as his wife, and he hold you out to the world

and announce you to your friends and neighbors as his wife from 1885 down to April, 1892?" The answers of Mrs. Forster were excluded by the court in its view of the law, and the issue raised in that case by the questions and offer demonstrate clearly the meaning and force of the complaint and the claim of Mrs. Forster, so as to present beyond doubt the legal question which must be met as to the enforceability of that claim, if proven, against the estate of the deceased, Cantoni. It also appears that long before the cessation of their relations, Mrs. Forster discovered that Cantoni was a married man, if she did not know the fact when she first went to live with him.

Mrs. Forster's counsel disclaims any attempt for recovery on the ground of a fraud, and asserts the survival of the cause of action on the theory of a broken contract, and the damages resulting therefrom. That broken contract is one by which a married woman, living with her husband and three daughters, allows herself to be enticed from that home, and procure a divorce from the obligations of a marriage whose benefits she avers she would not have lost but for the promises of Cantoni, in order to live, immediately on the making of the agreement, with another man, in a state of concubinage, for seven years, during the first two years of which period she was still the lawful wife of a living husband; and the performance of that contract on her part is such desertion of her own husband and home, cohabitation with Cantoni while yet the lawful wife of another, and the begetting of children to Cantoni while such relations existed, and the assistance in the disruption of the peace and happiness of Cantoni's own household wherein his wife and children dwelt. She was to free herself from the obligation of chastity and fidelity to her marriage vows by proceedings taken in a court of justice running concurrently with her own acts of cohabitation with the man for whom she deserted her husband. She was, by the alleged agreement, to justify her application for a divorce by a charge of adultery against her husband, which she was to prove, while she herself, in the performance of the same agreement, was living in adultery with another. The assertion of such a claim for damages as is made in this case seems to be radically irreconcilable with all of the principles of law designed to protect and preserve the sanctity of marriage, the legitimacy of children, and the well-being of society itself. It is the policy of the law to encourage forgiveness of causes for dissolution of marriage ties, and to favor all arrangements which tend to restore peace and harmony between husband and wife and a renewal of their conjugal relations. Agreements to separate are generally regarded as against public policy. Adams v. Adams, 91 N. Y. 384; Perry, Trusts, § 672; Daggett v. Daggett, 5 Paige, 509. Any agreement to bring about the dissolution of a marriage contract, and end its various duties and relations, is against sound public policy, and consequently illegal and void. Sayles v. Sayles, 21 N. H. 312. If the cause of action were even founded solely upon a broken contract to marry between an unmarried woman and an unmarried man, the cause of action would not survive or continue, and there-

fore a reviving order could not be made. Wade v. Kalbfleisch, 58 N. Y. 282; Code Civ. Proc. § 757.

The attempt of plaintiff's counsel to make the cause of action more than the mere breach of a contract to marry by the allegation of the loss of the benefits of the prior marriage which the contract was to break, and by services of a woman living with the promisor as his wife, though not his wife, necessarily uncovers the baseness of the whole contract as judged by the rules of public policy. The alleged property rights, the impairment of which is urged to make the cause of action more than one of mere injury to the person, are those which were destroyed, if destroyed at all, by the voluntary act of Mrs. Forster in willingly entering into and continuing in a wrongful conduct of life, forbidden by law, and calculated to destroy the ties of two marriages, and the peace of two homes. The motion, therefore, in the first action to continue the same against the executor of the deceased, Cantoni, is denied, and, in view of the grounds upon which that motion is denied, as no trial can be had unless the order now entered be reversed, the motion for a stay in the second action is also denied, without prejudice to a renewal of the application in case the denial of the motion in the first action be hereafter reversed or set aside.

Ordered accordingly.